Argued July 26, affirmed October 15, rehearing denied November 12, 1918.

## LA GRANDE NAT. BANK *v.* OLIVER.

(175 Pac. 434.)

**Landlord and Tenant—Landlord's Lien—Crops of Subsequent Years.**

1. Where landlord, by express provision of lease, is given lien upon crops as security for rent, the lien is effectual, not only as regards the crops of the first year, but also as to those raised during subsequent years; the lien attaching when crop is planted.

Banks and Banking—Instructions—Bank's Default in Collection.
    2.  In action on note, where defendant counterclaimed for proceeds
of crop on which rental notes deposited by defendant with plaintiff
bank for collection were a lien, and alleged that bank had applied
such proceeds to chattel mortgage which it took on such crops, in-
structions *held* to fairly submit issue of whether the bank had re-
ceived the rental notes for collection and knew of defendant's lien
when it took the chattel mortgage.

Trusts—Landlord's Lien—Collection by Bank.
    3.  Where landlord placed rental notes in hands of bank for col-
lection and deposited lease giving lien on crops, and the bank subse-
quently took a chattel mortgage on the crops, the bank upon receiv-
ing proceeds of sale of crops took them in trust for landlord.

From Multnomah: Robert Tucker, Judge.

Department 2.

This is an action by the plaintiff against the defend-
ant on a promissory note for $1,700 dated January 30,
1910, upon which there was a credit of $16.33 as of
March 27, 1913.

The defendant admits the execution of the note and
as a defense and counterclaim alleges that he owned
760 acres of land in Union County, known as the E. W.
Oliver farm, which he leased to Frank Cullen for seven
years beginning October 1, 1909, taking promissory
notes for the amount of each annual rent, each note
falling due on October 1st of the respective year of
the rental for which it was given, and that the lease,
which was in writing, provided for a cash rental of
$4,333.50 for the year 1910; for 1911, a cash rental of
$3,420, and the same amount for each of the remaining
years, to be paid "out of the first moneys received for
said year's crops, the said E. W. Oliver to hold a lien
upon said crop until such rental is paid." The lease
contained certain other provisions as to how the land
should be cultivated, and the buildings, fences and
improvements kept in repair.

It is also alleged that on March 24, 1911, Oliver placed the rent note due in 1910, that due in 1911 and the written lease with the plaintiff "for collection" and then notified it that the notes were rental obligations secured by the terms of the lease and made a first lien on the crop; that the plaintiff accepted the notes and lease under an agreement that it would use reasonable diligence in the collection of the notes; that at the time of the delivery to the bank there was due on the 1910 note a balance of $616.64, with interest thereon at the rate of eight per cent per annum from October 1, 1910; that the rental note for 1911 was for $3,420 and would become due and payable October 1, 1911, and that after the bank received the notes and the lease for collection purposes it took a chattel mortgage on the 1911 crop to be grown upon the land so leased, to secure a large indebtedness due it from Frank Cullen. It appears from the defendant's answer that on October 6, 1911, the bank received from Cullen and from the Grande Ronde Grain Company $4,109.59, as the proceeds of the 1911 crop grown upon the said lands, and at the time of such receipt there was due and payable on the two rental notes then held by the bank the sum of $4,109.59; that under the terms of his lease with Cullen, Oliver had a first lien on the grain for which the money was received by the bank; that the $4,109.59 was so received in trust for the defendant, to be applied in payment of said promissory notes; but the plaintiff after receiving this money "wrongfully applied the same upon the said chattel mortgage taken in its own favor as above stated" and wrongfully refused to apply it or any part thereof upon the said notes in its hands for collection.

It is further alleged that on January 30, 1913, when the note sued upon by plaintiff was executed, the de-

fendant did not know that the bank had received this money; that an error of $16.33 was made as to the amount, which is the item shown as a payment of March 27, 1913, and that on the latter date there was due from the plaintiff to the defendant the sum of $4,444.25, less $1,683.67, or $2,750.58.

All the material allegations of the further and separate answer are denied by the plaintiff in its reply. The case was tried by a jury which returned a verdict against the plaintiff for $3,538.60, upon which judgment was entered and from which this appeal is taken.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Charles H. Finn* and *Messrs. Emmons & Webster,* with oral arguments by *Mr. Finn* and *Mr. Lionel R. Webster.*

For respondent there was a brief and an oral argument by *Mr. James G. Wilson.*

JOHNS, J.—On a former appeal, in an opinion by Mr. Justice BURNETT, this court held that the facts alleged in the answer constituted a valid defense and counterclaim to plaintiff's cause of action: *La Grande Nat. Bank* v. *Oliver,* 84 Or. 582 (165 Pac. 682), and the question is now presented as to whether the proof sustains such allegations. It is undisputed that the defendant was the owner of, and held the record title to, 760 acres of agricultural land in Union County, Oregon, known as the E. W. Oliver farm; that on October 1, 1909, he leased the farm to Frank Cullen for a period of seven years from that date, at an agreed annual cash rental and that the lease provided that the rental should be "payable on the first day of October of each year respectively, out of the first

moneys received for said year's crops, the said E. W. Oliver to hold a lien upon said crop until such rent is paid, said yearly rentals being evidenced by seven promissory notes of even date herewith.''

The lease was executed by both parties and duly witnessed, but was never acknowledged and was not filed or indexed as a lease or chattel mortgage, although it was filed and recorded in the office of the county clerk of Union County on October 4, 1909, at page 588 of Book C of what are known as ''Miscellaneous Records.'' It is also undisputed that on March 24, 1911, Frank Cullen, the lessee, executed to the plaintiff his certain chattel mortgage upon the ''growing crop of wheat now sown and growing and to be sown and grown in the spring of 1911, on the farm of Lige Oliver, Turner Oliver and John Smith, situate in the county of Union,'' to secure one note of $1,500 and five notes of $200 each, all payable six months after date; that said mortgage was duly executed, witnessed and acknowledged, and was duly filed and recorded as such; that on and between August 4 and September 13, 1911, Grande Ronde Grain Company issued to Cullen its certain warehouse receipts, and that on October 6, 1911, in exchange therefor that company gave to the plaintiff its certain check for $5,328.25, which was paid.

The real controversy is over the legal force and effect to be given the clause in the lease by which Oliver was ''to hold a lien upon said crop until such rent'' should be paid, and whether the plaintiff received the lease and the Cullen notes from Oliver for collection and had knowledge of the terms of the lease at the time it took its chattel mortgage from Cullen.

The court gave the following instructions:

''1. I instruct you, gentlemen of the jury, that if you find from the evidence that the defendant Oliver had

entered into a lease of his land to Cullen, by the terms
of which lease he was given a first lien upon the crops
to be raised upon the land—and the meaning of the
term lien, as used herein, I will hereinafter explain to
you—for the payment of the rent thereof, and Oliver
placed the lease, together with the notes provided for
therein for the rent, with the plaintiff for collection,
and informed the bank of the fact that he had and held
a first lien upon all of the grain that should be raised
upon the leased premises for the years 1910 and 1911
by virtue of the lease to secure the payment of the
two promissory notes described in the answer, and
informed the bank that the notes were given for the
rent of the leased premises; and if you further find
from the evidence that the bank accepted promissory
notes and the lease with the full knowledge at that time
that the defendant Oliver by the terms of the lease had
and held a first lien upon all grain that should be
raised upon said real property to secure the payment
of the notes, and that the bank then and there promised
and agreed to and with Oliver that it would use reason-
able diligence to collect the promissory notes from Cul-
len in pursuance of said lease; and if you find from
the evidence that the bank so received the notes and
the lease for the purpose of collecting the same from
said Cullen out of the grain that was raised on the
premises during the crop year of 1911, with full knowl-
edge and notice that Oliver by the terms of the lease
had a first lien upon the grain so to be raised upon
the premises but thereafter took a chattel mortgage
on the grain in its favor to secure the payment of a
large sum of money which Cullen owed and would owe
it, as is alleged in the answer of the defendant, then,
in that event, gentlemen of the jury, I charge you as a
matter of law that the lien of the defendant Oliver as
set forth in said lease would be prior and superior to
the lien and claim of the plaintiff bank arising out of
its said chattel mortgage or its lien for furnishing
funds.

"2. The lien of defendant Oliver is what is known in
law as an equitable lien. It is a right of a special
nature, over the thing, which constitutes a charge or

incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable suit and may be sold under a judicial decree and its proceeds applied upon the demand of the person in whose favor the lien exists.    This lien is created by the contract of the parties, in this case E. W. Oliver and Frank Cullen, whereby in this contract an intention is sufficiently indicated to make some particular property a security for a debt or other obligation, thereby creating an equitable lien upon the property so indicated; and if the transaction resolves itself into such security, whatever may be its form, it is in law designated and constitutes in equity a lien.

"3. If you find from the evidence that the plaintiff bank was fully aware of Oliver's lien upon the grain, and which grain was afterwards included in its own chattel mortgage, and you further find that the plaintiff bank with this knowledge had and received the money from the sale of the grain, the defendant would be entitled to follow it as far as he could trace it, and has a right to recover for such substituted property, if such you find from the evidence to be, it having been converted into money, and to apply, to the extent of his lien on the crop, on the grain, the cash so derived from the sale of said grain, if so traced, for the reason that in such cases the law implies a promise, or, in other words, a contract on the part of the recipient of money under such circumstances as indicated to you, to pay it to the one to whom it justly belongs; in other words, the money derived from the crop which was impressed by defendant Oliver's lien to the extent of his incumbrance created by the lease.

"4. So that, if you find from the evidence that the bank, as is alleged in defendant's answer, received from Cullen and from the Grande Ronde Grain Company as the proceeds of the sales of the grain grown on said leased premises the sum as set forth by defendant's answer, and that when the plaintiff bank so received that amount it well knew it was the proceeds of the grain so raised, and that the bank further knew that Oliver had a lien for the payment of the two notes, then, in that event, the defendant would be entitled

to realize upon his counterclaim and would be entitled to a verdict at your hands.

"5. The Court: If, gentlemen of the jury, on the other hand, you find from the evidence that the plaintiff bank took possession and custody of the said lease simply as a deposit for safekeeping and not for the purpose of collection, that said bank and its cashier or officers thereof had no knowledge of the contents of said lease at or prior to the securing of the chattel mortgage by it from tenant Cullen, then the bank would not be charged in its dealings and transactions with the said Cullen in reference to its chattel mortgage or its subsequent dealings, furnishing money for the prosecution of his work upon the farm, and without knowledge of Oliver's rights arising under his lease, with any duty other than a reasonable diligence in handling the documents entrusted to its custody. The duty of the bank extends no further than to make proper demand of payment, and in some instances to make protest; and if there were special instructions connected with the deposit, to diligently carry those instructions out. So if it held for collection only these documents, if it duly demanded payment, it is not forbidden to obtain in good faith a preference from the same debtor for a debt arising to itself. In other words, by virtue of this deposit of these notes the bank would not be precluded from dealing with other customers, or the same customer with which Oliver was dealing.

"6. It is incumbent upon the defendant Oliver to bring actual notice to the plaintiff bank, by and through its officers, of his lien, for the reason that the filing or recording of the lien would not be notice, because it has been admitted in the trial of this case that the lease was not acknowledged or recorded so as to impart constructive notice, like that arising from the record of the filing of a mortgage. [To counsel.] Am I not correct in that, gentlemen?

"7. So, that, gentlemen of the jury, if you find from the evidence that the plaintiff bank did not have actual notice of Oliver's lien on said grain by notice of his lease, then no liability could be visited upon the bank

for its failure to recognize Oliver's claim or lien and to apply the proceeds of money coming into the bank's hands and from Cullen or the Grain Company, as the proceeds of the sale of the grain on the leased premises, and your verdict in that case should be for the plaintiff bank.

"8. You are instructed that the defendant must recover, if at all, on his counterclaim, on the strength of his own title to the money received from Cullen as proceeds of the grain, and the burden of proof is upon the defendant Oliver in the particulars above set forth, as I have indicated to you.

"9. I further instruct you that any money received from the proceeds of the grain raised by Cullen upon defendant's land, even though plaintiff knew of the same and paid said money out upon the debts of Turner Oliver, or others, upon the instructions or with the consent of the defendant Oliver, then that would be paying money for the benefit of the defendant herein and he cannot complain thereof; and under such circumstances, if you find that the plaintiff bank did make such payments, then the plaintiff did the same rightfully and you must find for the plaintiff as to those particular sums so paid.''

1. While not uniformly so held, yet by the weight of authority and better reasoning,

"It is generally recognized that parties may, by an express provision in the lease, confer upon the landlord a lien upon the crop raised upon the demised premises, as security for the rent": 16 R. C. L., § 489, and authorities cited.

Such a lien is effectual not only as regards the crops of the first year, but also as to those raised during subsequent years: *McCaffrey* v. *Woodin,* 65 N. Y. 459 (22 Am. Rep. 644); *Baxter* v. *Bush,* 29 Vt. 465 (70 Am. Dec. 429); upon the principle that a tenant may transfer a title to crops not then *in esse* but which are to be grown on the land under the terms of the lease, and

the lien will attach when the crop is planted: *De Vaughn* v. *Howell,* 82 Ga. 336 (9 S. E. 173, 14 Am. St. Rep. 162). There is much stronger reason to sustain a lien where the crops are to be grown by the tenant upon the farming lands the record title of which is in the landlord.

2, 3. Under instructions 3, 4, 5, 6 and 7, the question as to whether the plaintiff received the Cullen notes from Oliver for collection and had knowledge of the existence of the lease and of its terms and provisions, at the time it took its chattel mortgage, was fairly submitted to the jury, which found for the defendant in the full amount of his counterclaim. Assuming, as we must for the purposes of this opinion, that the jury found that the plaintiff received the Cullen notes from Oliver for collection and had knowledge of the existence of the lease and its provisions when it took its chattel mortgage, the case comes squarely under the opinion of Mr. Justice SWAYNE in the case of *Butt* v. *Ellett,* 19 Wall. 544 (22 L. Ed. 183), where it is said:

"The appellants had full notice of the rights of Sillers. They read the lease a few days after its execution. Ellett also notified them of his rights and claim. The cotton went impressed with his lien into their hands. When they sold it they took the proceeds in trust for his benefit and became liable to him for the amount."

So, in this case, when the bank received the check from the Grande Ronde Grain Company for the Cullen grain, it received it in trust for the defendant and became liable to him for the amount.

There is some contention as to the application and appropriation of payments, but that question was fairly submitted to the jury by instruction number 9,

and it appears from the amount of the verdict that the jury found in favor of the defendant on that issue.

The plaintiff took eight exceptions to the charge and requested nineteen different instructions, which were not given except so far as they are embodied in the charge. We are of the opinion that all of the material questions were fully and fairly covered by the instructions of the trial court, and that instruction number 5 was favorable to the plaintiff. While the testimony upon some of the vital points is not strong, the fact remains that under the instructions the jury found for the defendant in the full amount of his counterclaim and that there is some testimony in the record to support the verdict on all of the material issues.

Assuming, without deciding, that the court did err in permitting F. L. Meyers, the plaintiff's cashier and witness, to be cross-examined as to matters tending to establish the counterclaim of the defendant, any such error was cured by subsequent ruling and instructions.

The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and HARRIS, JJ., concur.

---

· Argued October 3, affirmed November 12, 1918.